UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LARRY GEORGE** | **CASE NO. 6:20-CV-00082** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **ORKIN, LLC** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

**MEMORANDUM RULING**

The present matter before the Court is Defendant's Motion for Summary Judgment[1] filed by Orkin, LLC ("Orkin"). Orkin seeks dismissal of all claims against it. Larry George has opposed the motion,[2] to which Orkin has filed a reply.[3] For the following reasons, the motion is GRANTED.

**I.**
**BACKGROUND**

Plaintiff Larry George asserts age discrimination and hostile work environment claims against defendant Orkin under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, and the Louisiana Age Discrimination Employment Act ("LADEA"), La. R.S. 23:311-14.[4] George was hired by Orkin's Lafayette branch as a termite sales inspector in April 2013.[5] He was 55 years old at the time he was hired.[6] George's first supervisor at Orkin was the Lafayette branch manager, Jeff Hargrave.[7] Orkin required that its Lafayette termite sales staff maintain a monthly average of $15,000 of sales of termite services, calculated over a rolling three-

---

[1] ECF No. 16.
[2] ECF No. 18.
[3] ECF No. 19.
[4] ECF No. 1-1 at 3.
[5] *Id.*; ECF No. 16-4 at 7.
[6] ECF No 1-1 at 3.
[7] ECF No. 16-4 at 8.

1

month period.[8] In October 2016, Hargrave formally counseled George because he missed this target, and noted that George's missed sales targets had been discussed in previous months.[9] Hargrave further warned George that his continued failure to meet his sales targets would result in continued counseling and could result in his termination.[10] Hargrave held another formal counseling session with George about missed sales targets in November 2016 and issued a formal warning to George in December 2016.[11]

Scott Puckett replaced Hargrave as branch manager and George's supervisor in April 2017.[12] Like Hargrave, Puckett counseled George about his failure to meet his sales targets, with the first such counseling occurring in December 2017.[13] Puckett then issued George a formal warning for missing his targets in January 2018.[14] In April 2018, Puckett issued George a "final warning" regarding his failure to meet his sales targets.[15] On November 2, 2018, Puckett issued another "final warning" to George for his low sales numbers.[16] On November 19, 2018, Puckett issued a third "final warning" to George for missing his sales targets.[17] The summary judgment record, therefore, reflects eight occasions where George was either counseled or warned that his sales performance fell below Orkin's sales targets and that such failure provided grounds for termination.

---

[8] ECF No. 16-4 at 161.
[9] *Id.*
[10] *Id.*
[11] *Id.* at 163, 165.
[12] ECF No. 16-5 at 1.
[13] ECF No. 16-4 at 168.
[14] *Id.* at 169.
[15] *Id.* at 170.
[16] *Id.* at 171-73.
[17] *Id.* at 174-76.

On December 13, 2018, Puckett terminated George for "substandard work performance."[18] The meeting at which the termination occurred was attended by George, Puckett, and Tony Joseph, who was the Lafayette branch's termite manager at the time.[19] George was 60 years old at the time of his termination.[20] George was told that the person who was hired to replace him was 21 years of age at the time he was hired.[21]

George contends that the counseling sessions and warnings were part of a campaign by Puckett to "get rid of" him and two other Orkin Lafayette employees—Rand Rouly and Amaury Pelegrin—because of their age.[22] Rouly was a pest control technician for Orkin who worked in sales for a short time but subsequently returned to pest control.[23] Rouly is under the age of 40.[24] Pelegrin was also a salesperson for Orkin who was over the age of 40.[25] George does not dispute that he failed to meet his sales targets.[26] Instead, he alleges that Puckett actively undermined his sales performance to justify terminating George.

Specifically, George contends that Puckett changed the way sales leads were handled, and that this was part of his attempt to force George out.[27] Prior to this change, leads for potential sales in a geographic territory were sent from an Orkin office in Atlanta directly to the sales inspector in charge of that territory, or to office workers local to the territory who then forwarded the leads to the inspector who covered that territory.[28] George testified in his deposition that, as a general

---

[18] *Id.* at 177.
[19] *Id.* at 17.
[20] ECF No. 1-1 at 3.
[21] ECF No. 16-4 at 41.
[22] *Id.* at 8.
[23] *Id.* at 8-9.
[24] ECF No. 16-1 at 13.
[25] ECF No. 16-4 at 9.
[26] *Id.* at 11-17.
[27] *Id.* at 9.
[28] *Id.* at 10.

rule, the Lafayette-based salesperson assigned to a territory was given the first chance to pursue a lead from within that territory. An exception to this rule was that sales personnel were allowed to pursue "creative" sales outside their territories—i.e., sales not based on leads.[29] Sales personnel were also allowed to follow up on a lead outside their territory if the territory's designated salesperson was unavailable.[30]

George alleges that Puckett changed this system of distributing leads so that leads were sent first to Puckett, and Puckett then directed the leads to sales personnel at his discretion.[31] George alleges that he was the "top lead closer in the region" until this change was implemented.[32] George further alleges that after the change, Puckett gave leads that should have gone to George, Rouly, and Pelegrin to Robert Besson—a new Orkin salesperson that George alleges had little or no prior experience in termite service.[33] George testified that he possesses documents showing that Besson received leads from George's territory, and that these leads produced in excess of $100,000 in sales during October–November 2018.[34] The summary judgment record, however, does not appear to include these records.[35]

---

[29] *Id.* at 33.
[30] ECF No. 16-4 at 10.
[31] *Id.* at 10.
[32] *Id.* at 9.
[33] *Id.* at 8, 19.
[34] *Id.* at 16.
[35] The Court presumes that George refers to the "Termite Completion List" or "production report," attached as Exhibit 24 to George's deposition, which appears to list the Lafayette branch's sales from September 5, 2018 to November 30, 2018. [ECF No. 16-4 at 185-209] George testified that the entries he highlighted in that report are instances in which one of the following occurred: Puckett was given credit for work George performed; the noted work resulted from a lead that originated in George's territory but was given by Puckett to another salesperson or technician for completion, thus denying George credit; George had previously proposed the job to the client but Puckett had another salesperson or technician complete it, thus denying George credit; or Besson was given credit for a sale that was originally made by Rouly. [ECF No. 16-4 at 28-37] However, the total value of all highlighted entries is $23,447.09, and, furthermore, the highlighted entries are not all instances in which Besson was given a lead from George's territory. Therefore, the summary judgment record does not support George's testimony that from October–November 2018, Besson was given leads from George's territory that were valued at more than $100,000.

George further alleges that some inspections and re-inspections that he had performed were listed in Orkin's accounting system as having been done by Puckett, depriving George of both commissions and credit for the sales.[36] George testified that Pelegrin told him that Puckett had given Pelegrin leads in George's territory and instructed him not to tell George about the existence of the leads.[37] He also testified, however, that around this same time, Puckett gave some leads from Pelegrin's territory to Besson.[38] George also acknowledges that Puckett gave George sales leads from territories other than his own, but contends that Puckett knew that these leads were unlikely to result in sales.[39]

George also testified at his deposition that Puckett did not allow George and Pelegrin to sell termite baiting systems for less than $1,500, while he allowed other inspectors, like Besson, to sell them for less, further prejudicing the older employees.[40] George further testified that Puckett prevented Adam Dugas, a termite technician, from forwarding to George a lead for a sale—as was the typical practice—and that George witnessed Puckett force Dugas to complete the sales paperwork over Dugas' objection that it was not part of his job duties.[41]

George believes that Puckett was trying to force him, Rouly, and Pelegrin to resign. George asserts that he was told that Puckett stated at a meeting that he wanted to replace the older sales employees with younger workers.[42] George was not present at the meeting where this statement was allegedly made, but the statement was relayed to him by multiple employees who were allegedly present.[43] While Puckett's alleged statement did not name specific employees, George

---

[36] ECF No. 16-4 at 27-28.
[37] ECF No. 16-4 at 32-33.
[38] *Id.* at 34.
[39] *Id.* at 42.
[40] *Id.* at 30.
[41] *Id.* at 30-32.
[42] *Id.* at 9, 39.
[43] *Id.*

believes Puckett's statements referred to George, Rouly, and Pelegrin because Puckett told those three employees at a separate 2018 meeting that they were "stuck in their ways" as to how they performed their sales duties.[44] George noted in an email that he drafted and sent to himself that, during a November 2, 2018 meeting with Puckett to discuss George's sales figures, Puckett remarked that George might be too old for the job.[45] In another email to himself, George noted that Puckett and Greg Roberts—a manager above Puckett's level—made statements to him to the same effect in March 2018.[46] George testified that in the summer of 2018, Greg Mouton relayed to George that Puckett told Mouton that Puckett was trying to "get rid" of George and Pelegin.[47] Rouly and Ronald Girouard, a pest control manager, averred in affidavits that they heard Puckett make what Girouard called "derogatory comments" about George's age.[48]

In March 2018, Girouard told George that Puckett was trying to find a reason to terminate George.[49] George testified that around the time of this conversation, George was told he would be transferred to a New Orleans Orkin branch without any arrangements for travel, but Orkin's human resources department ultimately blocked the transfer.[50] George testified that he believes the transfer was another attempt by Puckett to encourage George to quit.[51]

George argues that his termination was due to his age, was in part retaliation for his making complaints to Puckett about his management, and that he was terminated when similarly situated employees were not. Specifically, George testified that, two days prior to his termination, Orkin held an employee meeting at the Lafayette branch without the Lafayette managers present, at

---

[44] *Id.* at 9.
[45] ECF No. 16-4 at 180.
[46] *Id.* at 24-25, 181.
[47] *Id.* at 40.
[48] ECF Nos. 18-3, 18-4.
[49] ECF No. 16-4 at 18.
[50] *Id.*
[51] *Id.*

which multiple people made complaints regarding Puckett's management.[52] George spoke with Puckett privately after the meeting to complain about leads from his territory being given to another sales person.[53] George also alleges that Rouly and Pelegrin held the same position as George and also failed to meet sales goals but were not terminated for poor performance.[54] The summary judgment record does not, however, reflect the frequency or extent to which these employees missed quotas, or whether they had a history of being counseled or warned about missing targets.

Orkin maintains that George's termination was driven solely by poor sales performance and that George's age was not a factor in his termination.[55] Puckett testified in his affidavit that he made no comments about George's age or and made no comment that he intended to replace Orkin employees with younger ones; he also stated that he did not distribute sales leads based upon age.[56] Puckett did not dispute that he changed how leads were distributed, but contended that sales leads were owned by Orkin and that distribution was within Puckett's discretion. Puckett exercised this discretion by considering factors such as employee schedules, proximity to the potential sale, and past performance.[57] Puckett also asserts that all termite inspectors in his supervision occasionally took leads in other employees' territories, and inspectors were allowed to create or develop sales without geographic restriction.[58]

In June, 2019, George submitted a Charge of Discrimination to the Louisiana Commission on Human Rights and the Equal Employment Opportunity Commission.[59] The EEOC

---

[52] *Id.* at 17.
[53] *Id.*
[54] ECF No. 16-4 at 21.
[55] ECF No. 16-5 at 1.
[56] *Id.* at 2.
[57] *Id.*
[58] ECF No. 16-5 at 2-3.
[59] ECF No. 16-4 at 115.

subsequently issued a "right to sue" letter that included a statement that its investigation was "unable to conclude that the information obtained establishes violations" of the ADEA.[60] George brought suit in the 15th Judicial District Court for the Parish of Lafayette, requesting compensatory damages, liquidated damages, attorney's fees, and costs.[61] Orkin removed the suit to this Court, asserting federal question jurisdiction and diversity jurisdiction.[62]

## II.
### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[63] The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.[64] Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses.[65] If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.[66] To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

---

[60] *Id.* at 117.
[61] ECF No. 1-1 at 3, 4.
[62] ECF No. 1.
[63] Fed. R. Civ. P. 56(a).
[64] *See Matsushita Electric Industries v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).
[65] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).
[66] *See Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986).

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial.[67] If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims.[68] Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor.[69] Under this standard, the non-movant cannot rely on unsupported assertions or arguments but must submit sufficiently probative evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment.[70]

In considering a summary judgment motion, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[71] "Credibility determinations are not part of the summary judgment analysis."[72] Rule 56 "mandates the entry of summary judgment . . . against a

---

[67] *Celotex Corp.*, 477 U.S. at 324–326, 106 S. Ct. 2548.
[68] *Id.*
[69] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).
[70] *Celotex Corp.*, 477 U.S. at 330–331, 106 S. Ct. 2548.
[71] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)(court must view all facts and evidence in the light most favorable to the non-moving party).
[72] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[73]

### III.
### ANALYSIS

#### A. Age Discrimination.

Orkin first argues that George cannot establish a prima facie case of age discrimination under the ADEA or the LADEA. The ADEA prohibits discrimination against individuals who are at least 40 years of age on the basis of their age.[74] Employers are prohibited from failing or refusing to hire, discharging, or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment" due to age.[75] Employers are also prohibited from limiting, segregating, or classifying an employee "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee" due to the employee's age.[76] Claims under the ADEA are evaluated under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*.[77] "Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."[78] If the plaintiff establishes a prima facie case of discrimination, the burden shifts to

---

[73] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[74] 29 U.S.C. § 623.
[75] *Id.* at (a)(1).
[76] *Id.* at (a)(2).
[77] 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).
[78] *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (citation and quotation marks omitted).

the employer to articulate legitimate, nondiscriminatory reasons for termination.[79] If the employer articulates legitimate, nondiscriminatory reasons for an employee's termination, the burden then shifts back to the employee to show that the reasons articulated by the employer are a pretext for discrimination on the basis of age.[80] Because a plaintiff's burden under LADEA is the same as that under the ADEA, "Louisiana courts have traditionally looked to federal case law for guidance" in interpreting LADEA.[81]

### 1. Has George Established a Prima Facie Case of Discrimination?

Orkin contends that George has not established a prima facie case of discrimination under the *McDonnell Douglas* framework because he was not qualified for his position. Specifically, Orkin points to George's multiple counseling sessions and written warnings for failing to meet sales targets. George argues that the length of time he worked for Orkin shows that he was qualified for the sales inspector position he held. He also asserts that he "performed well as a salesman…while Jeff Hargrave was the Branch Manager and continued to perform well compared to his colleagues when Scott Puckett took over…."[82] George does not provide evidence comparing his sales performance to that of his colleagues over the course of his employment with Orkin. Instead, he offers the affidavits of Ronald Girouard, who was a Branch Service Manager for pest services at Orkin's Lafayette branch from April 2016 to May 2019, and Rand Rouly, who worked in various positions at Orkin's Lafayette branch and worked with George regularly.[83] Both testified that George's performance exceeded the performance of other employees who were not terminated.[84]

---

[79] *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015).
[80] *Id.*
[81] *LaBove v. Raftery*, 2000-1394 (La. 11/28/01), 802 So. 2d 566, 573.
[82] ECF No. 18 at 1.
[83] ECF Nos. 18-3, 18-4.
[84] *Id.*

Orkin's argument that George was not qualified for his position is grounded on an unpublished Fifth Circuit case and several district court opinions.[85] In these decisions, the courts held that the plaintiffs did not satisfy their prima facie burdens because evidence of poor performance undercut the plaintiffs' claims that they were qualified for their positions. This authority does not support Orkin's argument for at least two reasons.

First, Orkin's argument is inconsistent with published Fifth Circuit precedent. In *Bienkowsky v. American Airlines, Inc.*,[86] the employer argued that evidence that the plaintiff's supervisors were no longer satisfied with the plaintiff's work performance prevented the plaintiff from showing that he was "qualified" for his position and thus could not establish a prima facie case under *McDonnell Douglas*. The Fifth Circuit rejected this argument on the grounds that, in the termination or demotion context, the requirement that an employee prove "that he was performing his job at a level that met his employer's legitimate expectations" is redundant: "[p]lacing a plaintiff's 'qualifications' in issue at both the prima facie...and pretext stages of a termination case is an unnecessary redundancy."[87] According to the Court, the question at the prima facie stage is whether the employee was qualified when hired and whether that employee can "continue to possess the necessary qualifications for his [or her] job at the time of the adverse action."[88] The plaintiff may meet this burden by showing that he or she has not "suffered physical disability or a loss of a necessary professional license or some other occurrence that rendered him [or her] unfit for the position for which he [or she] was hired."[89] According to the Court, the "lines

---

[85] *Arensdorf v. Geithner*, 329 F. App'x 514, 516 (5th Cir. 2009); *Williams v. Luminator* Holding L.P., 2014 WL 174413, at *8 (E.D. Tex. Jan. 10, 2014); *Smith v. Dep't of Soc. Servs. Office of Cmty. Servs.*, 2010 WL 11601575, at *5 (M.D. La. Dec. 6, 2010); *Ashedom v. Fed. Reserve Bank of Dallas*, 2010 WL 4781155, at *5 (N.D. Tex. Nov. 9, 2010); *Rico-Sanz v. State*, 2006 WL 3147730, at *6 (M.D. La. Oct. 23, 2006).
[86] 581 F.2d 1503, 1505-06 (5th Cir. 1988).
[87] *Id.* at 1505.
[88] *Id.* at 1506.
[89] *Id.*

of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination."[90] The Fifth Circuit subsequently applied *Bienkowsky*'s approach in *Berquist v. Washington Mutual Bank*.[91] There, the Court emphasized that a focus on the plaintiff's work performance and whether that performance met his or her employer's legitimate expectations created an "unnecessary redundancy."[92]

Here, Orkin's reliance on George's performance-related counseling and warnings to attack George's prima facie case is the same evidence that it uses to support a legitimate, non-discriminatory basis for his termination. George was hired approximately three years before the first evidence in the record of job performance-related issues, which supports his argument that he was qualified for his position. Orkin has pointed to no evidence of any occurrence or change of circumstances that rendered George unqualified for his position at the time of his termination.

Second, unlike the cases cited by Orkin, George has submitted testimony from co-workers who testified that, in their opinion, George was qualified. Given that George was found sufficiently qualified to hire and work in his position at Orkin for approximately three years before his first counseling session and warning, he has satisfied the "qualification" element of a prima facie case.

In sum, George has sufficiently shown that he was qualified for his position at the time of his termination. Orkin does not contest the other requirements of George's prima facie case. Accordingly, George has met his prima facie burden under *McDonnell Douglas* and the burden now shifts to Orkin to show legitimate, non-discriminatory reasons for George's termination.

---

[90] *Id.*
[91] 500 F.3d. 344 (5th Cir. 2007).
[92] *Berquist*, 500 F.3d. at 351.

## 2. Pretext

Orkin contends that George's failure to meet his sales goals is a legitimate, non-discriminatory reason for George's termination, and cites George's eight counseling sessions and written warnings—including three "final" warnings—by two different supervisors from 2016 through 2018. Both supervisors warned George that his failure to meet sales targets was a ground for termination. This evidence is sufficient to shift the burden back to George to establish that Orkin's proffered reason for his termination is a pretext for unlawful discrimination. In order to show that the proffered reason for termination was pretextual, George must show that Orkin's "proffered explanation is unworthy of credence."[93] At the pretext stage, the question is whether the articulated reason was the actual reason for the termination.[94] In other words, the ADEA "requires a showing of 'but-for' causation."[95] "A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is a lie, may permit the trier of fact to conclude that the employer unlawfully discriminated."[96]

George first argues that the proffered reason for his termination is pretextual because Puckett undermined his sales performance by changing how Orkin distributed sales leads. George contends that Puckett steered sales leads to a younger employee in order to suppress George's sales numbers and justify George's termination.[97] Puckett's change in how Orkin distributed sales leads does not create a genuine issue of material fact as to pretext or whether age-related discrimination was the "but-for" cause of George's termination. Even if Puckett's change affected George's sales performance, George missed his sales targets and received counseling and written warnings by his

---

[93] *Goudeau*, 793 F.3d at 476 (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143 (2000)) (internal quotation omitted).
[94] *Id.* (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).
[95] *Goudeau*, 793 F.3d 470, 474.
[96] *Id.* (citing *Reeves*, 530 U.S. at 147-48).
[97] ECF No. 16-4 at 8, 19.

Page 14 of 19

prior supervisor, Hargrave, *before* Puckett changed the way sales leads were distributed. In 2016, Hargrave counseled George about his failure to meet his sales targets, issued written warnings to George about his missed targets, and advised George that failing to meet these targets could result in termination. Neither the Complaint nor the summary judgment record includes any allegations or evidence that Hargrave made discriminatory statements about George's age or that Hargrave engaged in any age-based discrimination against George. This is not a case where the reasons for an employee's termination changed over time.[98] The summary judgment record also includes no evidence, beyond George's testimony, that shows how Puckett's change to the distribution of leads actually impacted George, or the extent to which this change resulted in leads being shifted from George to younger employees. In sum, Puckett's change in how Orkin's sales leads were distributed does not support George's claim that the legitimate, non-discriminatory reasons for his termination were pretextual.[99]

George further argues that the reasons for his termination were pretextual in light of age-related comments made by Puckett. Specifically, George puts forward four assertions as to comments by Puckett:

- Puckett commented that George might be "too old" for the job during a November 2, 2018 meeting to discuss George's sales figures;[100]

- Puckett and a more senior Orkin manager made similar statements in March 2018;[101]

---

[98] *See, e.g., Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 920 (5th Cir. 2015) (finding the summary judgment evidence created a genuine dispute as to pretext where, inter alia, the plaintiff offered evidence and that the reason cited for his termination changed over time).
[99] George also suggests that other Orkin employees—specifically Rouly and Pelegrin—failed to meet sales targets but were not terminated. The summary judgment record, however, includes no evidence showing that these two employees suffered from the same sales performance problems as George. George appears to have consistently missed sales targets from 2016 through 2019. Nothing in the record shows that Rouly's or Pelegrin's performance problems, if any, were similar or as extensive as George's performance problems.
[100] ECF No. 16-4 at 180.
[101] *Id.* at 24-25, 181.

- Girouard's affidavit avers that Puckett made "derogatory comments" about George's age.[102] Rouly's affidavit states that Puckett made a comment at a meeting to the effect that "it's time to get rid of the old guys and bring in new blood," and made "other comments ... about Mr. George's age." Rouly concludes that Puckett's assertion that George's termination "had absolutely nothing to do with his age" was "hard to believe."[103] Neither affidavit identifies the dates or specific content of the alleged comments;

- Puckett told Orkin employees during a 2018 sales meeting that they "were stuck in their ways" as far as how they performed their sales duties and that "older employees needed to go to pave the way for the younger sales force."[104]

Workplace comments presented as circumstantial evidence of discrimination are probative of discriminatory intent if they create an inference of "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker."[105] "Stray" or "sporadic" age-related comments generally are not sufficient to show pretext.[106]

Here, the statements cited by George do not support an inference that the proffered reasons for George's termination were pretextual. First, the age-related comments cited by George are attributed to Puckett and occurred after Puckett replaced Hargrave as George's supervisor. As previously noted, George's failure to meet his sales target began *before* Puckett replaced Hargrave. Hargrave counseled George, issued George written warnings, and advised George that he could be terminated if he did not meet his sales targets. Yet, George makes no allegation nor does he point to any evidence that Hargrave made any disparaging age-related statements or engaged in any age-related discriminatory conduct. Accordingly, George has not met his burden of showing that the

---

[102] ECF No. 18-3.
[103] ECF No. 18-4.
[104] ECF No. 16-4 at 9.
[105] *Oldenburg v. Univ. of Texas at Austin*, No. 20-50648, 2021 WL 2549905, at *2 (5th Cir. June 21, 2021). (quoting *Goudeau*, 793 at 475–76).
[106] *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1162 (5th Cir. 1993) (supervisor's statements that plaintiff was an "old fart" and that a younger person could work faster were "stray" remarks that were insufficient to show discriminatory animus); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012).

legitimate, non-discriminatory reasons for his termination were pretextual. Orkin's Motion for Summary Judgment is therefore GRANTED with respect to George's age discrimination claims under the ADEA and LADEA.

## B. Hostile Work Environment.

George asserts that Puckett's comments expressing that "older employees needed to go to pave the way for the younger sales force" created a hostile work environment.[107] To establish a prima facie hostile work environment claim based on age discrimination, a plaintiff must show "that (1) he was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer."[108] Harassment creates an objectively intimidating, hostile, or offensive work environment if it is objectively unreasonable, i.e., if the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment."[109] Such conduct must be objectively and subjectively offensive, which turns on the totality of circumstances, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance."[110] Isolated incidents, unless extremely serious, do not suffice.[111] "The sporadic use

---

[107] ECF No. 1-1 at 4.
[108] *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).
[109] *Id.* (citing *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)).
[110] *Id.* (citing *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007)).
[111] *Wright v. United Parcel Serv., Inc. (Ohio)*, 842 F. App'x 869, 875 (5th Cir. 2021) (citing *Lauderdale v. Tex. Dep't of Crim. Just., Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007)).

of abusive language, gender-related jokes, and occasional teasing does not satisfy the demanding standard for hostile work environment claims."[112]

As noted above, George makes four assertions as to Puckett's alleged age-related comments. Two of those statements were allegedly directed to George personally. One statement was made to Orkin's employees during a sales meeting that George did not attend. Finally, Rouly and Girouard testified that they overheard Puckett making "derogatory comments" about George's age. But neither Rouly nor Girouard describe the content or timing of Puckett's comments. With respect to Puckett's alleged comments during a sales meeting that older employees need to "pave the way for [a] younger sales force," the record also reflects that Puckett was threatening to terminate all of the sales staff at the same meeting, regardless of age.[113] The record also does not reflect any other similar comments by Puckett at other sales meeting. Taking these comments as a whole, they are not so pervasive or serious to create a triable issue on whether Puckett's statement and conduct created a hostile work environment.[114]

Accordingly, Orkin's motion is GRANTED as to George's hostile work environment claim.

---

[112] *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(internal quotations omitted).
[113] ECF No. 16-4 at 39.
[114] *See, e.g., Dediol*, 655 F.3d at 442-443 (finding a genuine issue as to the existence of a hostile work environment when the plaintiff's supervisor "profane" comments and age-related comments "on almost a daily basis"); *Hackett v. United Parcel Serv.*, 736 F. App'x 444, 450 (5th Cir. 2018) (finding no genuine issue as to hostile work environment when plaintiff cites eight incidents over seven years); *Gonzales v. Wells Fargo Bank, Nat'l Ass'n*, 733 F. App'x 795, 798 (5th Cir. 2018) (finding no genuine issue based on a single age-related comment).

## IV.
### CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment[115] is GRANTED. George's claims under the ADEA and LADEA are DISMISSED WITH PREJUDICE.

THUS DONE in Chambers on this 14th day of December, 2021.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[115] ECF No. 16.